JOHN PAINE *vs.* RICHARD FRANCE AND FRANCIS MORRIS.

CONTRACT,—CONSTRUCTION OF: PLEADING IN EQUITY: PRACTICE IN
EQUITY: COMITY: CONFLICT OF LAWS: PRESUMPTIONS.—On the 18th of
July, 1849, the Maryland Commissioners of Lotteries contracted with R.
F., F. M. and G. C., to approve and draw within the city of Balti-
more, for their exclusive benefit, within and during three years, com-
mencing on the first of December, 1850, such lawful schemes in the
Maryland Consolidated Lotteries as might be presented by the contrac-
tors to the Commissioners, and also to issue and deliver to the contrac-
tors annually, during that time, a certain number of licenses for the sale
of lottery tickets in Baltimore, and also a number of other licenses for
the sale of such tickets in the State of Maryland, outside of said city.
G. C., died, and the survivors on the 27th of July, 1850, assigned to J.
P. the benefit of one-half of the contract of the 18th of July, 1849. A
bill was filed by J. P. setting out the facts, relying solely upon the con-
tract of July 18th, 1849, praying for an account of the sales of tickets
in said lotteries, and that he might be paid one-half of the avails of said
sales after equitable deductions. R. F. and F. M., in their answer, after
alleging the violation and forfeiture of the first contract on the part of
J. P., charge that he was, notwithstanding, paid in full all that he might
have claimed in virtue thereof, and further allege that the contract of
July 18th, 1849, was suspended by a new and different contract made by
the Commissioner of Lotteries under the Constitution of 1851, with R.
F., and that the new contract took effect April 1st, 1852; and that they
were in no way indebted to said J. P. After general replication and testi-
mony taken, it was agreed between the parties that the sales of schemes
and tickets in said lotteries were forbidden by the statutes of the several
States of the United States outside of Maryland. The covenant on the
part of R. F. and F. M. was to pay to J. P. "five per cent. on the amount
of tickets at scheme prices sold by them or their agents in the Maryland
Consolidated Lotteries," &c.—HELD:

1st. That the complainant having made the contract of July 18th, 1849, a
part of his bill, and no application having been made to amend the bill, in
conformity with the facts disclosed by the answer or evidence, the relief
must be limited to that contract.

2nd. That the covenants of the respondents must be construed with regard
to those of the complainants, and by presumption of law would be limi-
ted to the same subject matter.

3rd. That the respondents were liable to account to the complainant for
all avails and profits arising from the enjoyment of the lottery privileges

Paine *vs.* France et al.

during the term mentioned in the original contract; but independently of all questions arising from the comity of Courts or States, or the conflict of laws of the several States, the letter of the contract limits its operations to sales made within the State.

4th. That a clear and manifest intent is not to be disregarded to obtain some pecuniary advantage to the State; nor will it be presumed that the legislation and policy of other States was unknown to the State of Maryland, or that she sought to enrich herself at the expense of other States.

APPEAL from the Circuit Court of Baltimore city:

The bill of complaint in this cause was was filed by the appellant against the appellees in the Circuit Court of Baltimore city, (MARTIN, J.) to compel an account and payment to him of one-half of the proceeds of sales of lottery tickets in the Maryland Consolidated Lotteries, from the 1st of December, 1850, to the 1st of December, 1853. The allegations of the bill and facts of the case, are set forth in the opinion of this Court.

The cause was argued before BOWIE, C. J., and BARTOL, COCHRAN and WEISEL, J.

*R. T. Merrick & Reverdy Johnson* for the appellant, argued:

1st. That the Court below erred in refusing to enlarge the order of reference as to allow a full statement of the accounts between the parties on the complainants' petition, notwithstanding the previous opinion of July 13th, 1857. An order or reference with instructions to state an account, with a view to a final decree, is not conclusive upon the Court, and may be reviewed by the Court pronouncing it without a bill of review; and on further proof or more mature consideration at any time before final decree, the Court may reverse its opinion, may reject the account made in conformity to it, and may refuse all relief; and the fact that a party has, by

Act of Assembly, a right of appeal from such an order as partaking of the quality of finality, does not impose upon him the obligation to resort to the remedy of appeal. The statutory remedy by appeal from an order, saving the quality of finality, does not militate against the general power and authority of the Court, while the cause is in *fieri*, to review and correct any previous erroneous opinion, when no change of property has been effected under its interlocutory order. It does not make absolutely final what before was revocable, it only makes it applicable. *Snowden vs. Dorsey,* 6 *H. & J.,* 114. *Hagthrop vs. Hook,* 1 *G. & J.,* 271 *and* 309. *Strike vs. McDonald,* 2 *H. & G.,* 258. *Hungerford vs. Browne,* 3 *G. & J.,* 142. *Claggett's Adm'r vs. Crawford's Trustee,* 12 *G. & J.,* 275. *Darrington vs. Rogers,* 1 *Gill,* 403. *Dugan vs. Gittings,* 3 *Gill,* 154. *Ware vs. Richardson,* 3 *Md. Rep.,* 505, 554. *Pullian vs. Christian,* 6 *How..* 208, 209, *per Taney, C. J. Alexander's Practice,* 177, 178, *and* 127, 128. *Daniel's Prac.,* 1475.

The Act of 1845, ch. 367, uses the same terms as former Acts, and was not meant to change the law in this respect. 1 *G. & J.,* 309. *Ware vs. Richardson,* 3 *Md. Rep.,* 554.

The right of immediate appeal may be waived without prejudice to any rights of the party. *Ware vs. Richardson,* 3 *Md. Rep.,* 555. *Code, Art. 5th, sec.* 22. The Court below ought to have enlarged the reference so that the Appellate Court might have had all the accounts before them, and might have passed a final decree concluding the controversy.

2nd. That the policy of the State of Maryland, at the time of the contract in question, was favorable to sales of lottery tickets, and its resources were swelled by the dealing. Acts of 1845, ch. 92, and 1846, ch. 118. *Constitution of* 1851, *Art.* 7, *secs.* 4 and 5.

3rd. That the conflict of the laws of other States is no bar to the complete recovery on a contract sanctioned by, and emanating directly from, our own State sovereignty. The

comity of States is subordinate to positive law, and if there be a conflict our own law must prevail. *Gardiner vs. Lewis,* 7 *Gill,* 378, 392, 395. Comity rests on voluntary consent and is inadmissible when contrary to the known policy or injurious to the interests of the State where it is urged, and it is only in the silence of any positive rule affirming or denying the operation of the foreign law, that courts of justice presume the tacit adoption of them by their own government unless they are repugnant to its policy or injurious to its interests.

A foreign law is never allowed any force when either the State or its citizens may suffer loss or inconvenience from it, and this applies to questions of morals, to *mala in se,* as well as to *mala prohibita.* 2 *Kent,* 406, 407 457, 458, *note b.*— *Davis vs. Jaquin,* 5 *H. & J.,* 100. *Wilson vs. Carson,* 12 *Md. Rep.,* 75. *Bank of Augusta vs. Earle,* 13 *Peters,* 589. *Story's Conflict of Laws, secs.* 32, 38, 239, 544. 6 *B. Mun.,* 599. 9 *Sm. & Mar.,* 249.

The comity which is administered is not the comity of Courts, but of the Nation, and hence a Court has no right to affix any higher standard of morality than that which its own legislature has reared. *Story, sec.* 38. Where a contract has been made under our own law, conflicting with a contract in another country, our own law prevails over the foreign. *Story, sec.* 239.

4th. But, by the laws of all States, even those which forbid the sale of lottery tickets, the complainant would, upon the case made by the bill, be entitled to an account and decree for his proportion of the profits made by the sale of lottery tickets under the partnership dealings, because the contract or duty here raised is collateral to the illegal contracts, if such there were, and is not tainted by it. The illegality of the sales and dealings were disposed of when the appellees received the money from the sales; the plaintiff is now only seeking his share of the realized profits, as

for money paid to his use, and received by the appellees for his benefit.. *Balt. & Susq. R. R. Co. vs. Passmore,* 6 *Gill,* 79. *Sharp vs. Taylor,* 2 *Philip's Chancery,* 801, 815, 817, 818. *Armstrong vs. Toler,* 11 *Wheaton,* 258, 272. *McBlair vs. Gibbs,* 17 *How.,* 236. *Thompson vs. Thompson,* 7 *Vesey,* 437. *Tenant vs. Elliott,* 1 *Bos. & Pul.,* 3. *Farmer vs. Russell, Ibid.,* 296. *Brooke vs. Martin,* 2 *Wallace Sup. Ct. Reps.,* 70.

5th. That the partnership funds and capital were extended to dealings outside of the State of Maryland, and whether embraced within the terms of the original contract or not, all profits thence derived are to be accounted for ; even the illegal purpose of a partnership dealing will not defeat the right. Whatever collateral, advantage is obtained by an agent, and, *a fortiori,* by a partner, though not included in the contract, he will be required to account for and pay over. *Story on Partnership, and Collier on Partnership,—passim. Case of Williams vs. Trye,* 23 *Eng. L. & E. Rep.,* 501. *Brooks vs. Martin,* 2 *Wallace Sup. Ct. Reps.,* 70.

*J. Mason Campbell & R. B. Taney Campbell* for the appellees :

1. The bill sets up no title except under the contract of 1849 and the profits therefrom resulting, and its prayer for relief is limited to that contract. It appears in the evidence that the contract of 1849 was surrendered under the provisions of the Act of 1852, ch. 113. No amendment of his bill to shew that fact was made by the appellant, nor did he make any amendment to shew the further fact alleged in the answer but not established by the proof, that a new contract was made upon the surrender of the old one. Under the bill, therefore, as it stands, the appellant is confined to the contract of 1849 and to the operations under it from the 1st December, 1850, when it took effect, up to the 27th of March, 1852, when it ceased to have any existence.

Had an amended bill been filed charging that the defend-
ants, (now appellees,) had, at the time of the surrender of the
original contract, entered into a new one, and claiming the
benefit of such new contract, the question would have arisen,
whether he was entitled to participate in it. But no such
question can arise on the bill as it stands.

2. The lottery contract, in which the appellant claims an
interest as assignee, was a contract by which the monopoly
of lotteries was conceded by the State of Maryland within its
territorial jurisdiction, and the State neither granted nor had
the right to grant the privilege of selling tickets in any other
State. The bill is limited accordingly to transactions and
sales made under and by virtue of the contract, and its pray-
er covers no sales except those made within the State of
Maryland. The appellees have excepted to all evidence,
oral and written, of sales out of the State. ·

3. Whatever may be the character of the pleadings, and the
extent to be attributed to them, there can be no relief in regard
to sales of lottery tickets made out of the State of Maryland.
These sales are conceded to have been made in violation of
the laws of the States where made. 1 *Story Eq. Jur.*, sec.
298. *Sedwick vs. Sedwick*, 6 *Gill*, 39. 2 *Kent Com.*, 466.
*Farmer vs. Russell*, 1 *Bos. & Pull.*, 299. *Thomson vs.
Thomson*, 7 *Vesey* 473. *Bayne vs. Suit*, 1 *Md. Rep.*, 86.
*Knowles vs. Haughton*, 11 *Vesey*, 168. *Story Confl. of Laws*,
sec. 242, 243, 258. *Gill vs. Oliver's Ex'ors*, 11 *How.*, 533.

4. The auditor has reported, that upon the legitimate bus-
iness there was a loss. The appellant's exceptions to the
auditor's report, so far as they are not covered by the prece-
ding points, present questions of fact merely as to the state
of the accounts, and the assumed action of the auditor in
regard to them, and this Court has not the materials for a
judgment as to the correctness of his conclusions, nor, if it
had, could it do more than assert the principles upon which
the account is taken.

Bowie, C. J., delivered the opinion of this Court:

The complainant, a citizen of New York, claiming as assignee of the defendants, of one-half interest in all avails and profits of a contract entered into by the latter, on the 18th July, 1849, with the Commissioners of Lotteries of the State of Maryland, filed his bill on the 24th Jan'y, 1853, praying that the defendants, (one of whom, Morris, does not reside in the State,) may answer, and "set forth the amounts of their sales of tickets in the Maryland lotteries by said contract referred to, and their sales of licenses for selling tickets in Baltimore, and of those for selling out of the city of Baltimore and elsewhere in said State; that the complainant may be paid his half of the avails of said sales, after such deductions as the Court should deem equitable, and for other and further relief.

The contract was exhibited as a part of the bill, and will be hereafter more particularly referred to.

The respondents admit the contract as exhibited, and a conditional assignment of one-half of the avails and profits by them, as survivors of George Cook; but insist the complainant did not comply with the conditions of his agreement; that the consideration failed, and they were not bound in equity to perform the contract.

They deny that the business was carried on under that contract, but allege that the same was superseded by a new contract entered into between the Commissioners of Lotteries and the respondents, which took effect the 1st of April, 1852, since which time the Maryland lotteries have been drawn under the latter.

The respondents aver, the complainant has received more than one-half of all avails of said contract, during its existence, and deny they are indebted to him in the amount charged, or in any other amount.

A general replication was filed and commission issued, and

22      v. 25.

testimony taken, much of it relating to sales out of the State, to which exceptions were filed by the appellees, and in connection with which an agreement was entered into between the solicitors of the parties; "that on the 18th of July, 1849, (and from that day to the present time, 24th of November, 1856,) the drawings of the Maryland lotteries, and the sales of schemes and of tickets in the said lotteries were forbidden in the United States, outside of Maryland, by the statutes of the several States of the Union; and this agreement is to avail as if the said statutes had been given in evidence."

On the thirteenth day of July, 1857, the case being submitted and argued, upon bill, answer and depositions, the Circuit Court of Baltimore city decided that the defendants were liable to account to the complainant for all avails and profits arising from the enjoyment of the lottery privileges during the term mentioned in the original contract, but that the account should be confined to sales made within the State, and sustained the exceptions to the evidence taken by the defendants as to the sales without the State.

The cause was referred to the auditor to state an account, in conformity with the opinion of the Court. Afterwards, the case coming up upon exceptions to the accounts and reports of the auditor, the Court remanded the same for correction, and "to state the same in conformity with the views of the Court expressed in its opinions of July, 1857, and of this day; (February, 1860.)"

At July term, 1864, the appellant by his counsel, filed his petition praying the cause might be remanded to the auditor, that the orders of the 13th of July, 1857, and 13th of February, 1860, might be rescinded, and other accounts stated in conformity with the prayer of the petitioners, which petition being dismissed, the cause was remanded to the auditor to state an account in conformity to the principles of the order

of reference heretofore made in the premises. An account being thus stated and returned, (after exceptions thereto by the complainant,) was by decree of the Court finally ratified, and the complainants bill dismissed, from which decree, this appeal is taken.

From this synopsis of the cause, it is apparent the main points are found in the force and effect of the contract, and the allegations and prayer of the bill.

Neither the one nor the other of these seems to contemplate a dealing in lottery tickets beyond the limits of the State Independently of all questions arising from the comity of Courts or States, or the conflict of laws of the several States, the letter of the contract limits its operations to the State.

The first covenant of exhibit A, on the part of the commissioners, is to deliver to the parties of the second part, etc., " eight annual licenses in each of said years for the sale of lottery tickets in the city of Baltimore, * * * and for the further sum of ——, thirteen other licenses each year for the sale of said tickets in the State of Maryland, out of the city of Baltimore," * * * * to authorize the said parties of the second part, etc., " to sell, either in the city of Baltimore or out of it, in the State Maryland, as the case may be, tickets or parts of tickets, etc.

There is no clause or word on the part of the commissioners enlarging the area of sale.

The covenants on the part of the respondents must be construed with regard to those of the parties of the first part, and by presumption of law would be limited to the same subject matter. The second covenant on the part of the respondents is, that they will pay to the parties of the first part five per cent. " on the amount of tickets at scheme prices, sold by them or their agents in the Maryland Consolidated Lotteries," and they undertake that the sum shall amount during each of three years, to the sum of $25,000, exclusive of expenses, and to pay the difference between such

sum, and the said per centage, at the end of each of said years; that a correct account of such sales shall be furnished, "sustained by such proof as the parties of the second part require from their distant agents," etc.

It was argued that as the last cited covenant secured the State five per cent. upon the amount of sales, and the respondents had guarantied it should amount to a certain minimum, it was the interest of the State, and therefore the intent of the contract, that the sales should be made wherever they could be. This deduction is hardly consonant with the rules of law, which require all parts of the contract to harmonize, if possible.

A clear and manifest intent, is not be disregarded to obtain some pecuniary advantage, by a construction opposed to that intent, nor can it be presumed that the legislation and policy of other States was unknown to the State of Maryland, and that she sought to enrich herself at the expense of her neighbors.

The complainant having made the contract a part of his bill, and interpreted it as we have, as far as he professed to set forth its terms, the relief prayed is based upon the same theory, and expressly limited to the State.

It was very properly said by the Judge below, that there had been no change in the bill since it was originally filed, no application to amend in conformity with facts disclosed by the answer or the evidence.

If these furnished grounds for relief, the case as made by the bill did not, and it is only on the hypothesis, that the contract relied contemplated sales out of the State, that the appellants, could complain.

Our opinion is, that such a position is untenable, and without deeming it necessary to examine the other points mooted, we will affirm the decree below, dismissing the bill, with costs to the appellee.

*Decree affirmed.*

(Decided June 28th, 1866.)